IN THE UNITED STATES DISTRICT COURT
FORTHE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIEGO L. HANSARD,**

    Petitioner,

v.                          Crim. Action No.   5:18-CR-50-1
                             Civil Action No.    5:21-CV-101

**USA,**

    Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On June 30, 2021, Diego L. Hansard ("petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action Number 5:21-CV-101 Doc. 1; Criminal Action Number 5:18-CR-50-1 Doc. 437].[1] The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2. The undersigned now issues this Report and Recommendation on the petitioner's motion without requiring the Government to respond and without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss the petitioner's motion.

### II.    PROCEDURAL HISTORY

**A. Conviction and Sentence**

On December 4, 2018, Hansard was charged with conspiracy to distribute cocaine base and heroin, maintaining a drug-involved premises, distributing narcotics in or near

---

[1] From this point forward, all document numbers refer to petitioner's criminal action.

1

schools and selling, distributing or dispensing narcotics. On November 18, 2019, Hansard pled guilty to Count 30 of the indictment, charging him with maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and (b), pursuant to a plea agreement. On January 29, 2020, a sentencing hearing was held before Judge Bailey. At that hearing, the parties were in dispute as to the relevant conduct, specifically as it related to the amount of drugs sold from the premises. Based on testimony presented at the sentencing hearing, the Court determined that the base offense level was 30, plus two levels for maintaining a premises, minus two levels for acceptance of responsibility. The Court therefore found a total offense level of 30 and a criminal history category of III, with the Sentencing Guidelines therefore calling for incarceration of 121 to 151 months. The Court sentenced petitioner to 121 months.

**B. Appeal**

On February 11, 2020, petitioner filed a Notice of Appeal. On appeal, petitioner argued that petitioner's sentencing at base offense level 30 was not supported by the evidence because Hansard was not present during the majority of the time the narcotics were being sold. On September 3, 2020, the United States moved to dismiss the appeal, citing the waiver of the right to appeal contained within Hansard's plea agreement. On October 20, 2020, the Fourth Circuit granted the motion to dismiss the appeal, finding that "Hansard knowingly and voluntarily waived his right to appeal and that the issue Hansard seeks to raise on appeal falls squarely within the scope of his waiver of appellate rights."

**C. Federal Habeas Corpus**

On June 30, 2021, petitioner filed the instant Motion. Therein, petitioner raised four grounds for relief: ineffective assistance of counsel, abuse of power, "U.S.C. 856 Unconstitutionally vague," and cumulative error.

### III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" **Beyle v. United States**, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" **Id**. (quoting **United States v. Addonizio**, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." **Id**. (citing **Miller v. United States**, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." **Id**. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." **Id**. (citing **Raines v. United States**, 423 F.2d 526, 529 (4th Cir. 1970)).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

3

## IV.   ANALYSIS

### A. Petitioner's claims other than ineffective assistance were waived as part of his plea agreement.

As set forth above, petitioner pleaded guilty in his criminal case pursuant to a plea agreement. That plea agreement included the following waiver:

> Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all rights to appeal the Defendant's conviction on the ground that the statute to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute. Defendant is also aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the right: a. to appeal any order, the conviction and any sentence that is within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742; **b. to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255**. Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial

4

>misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

[Doc. 292 at 2–3] (emphasis added).

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." ***Blackledge v. Allison***, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." ***Id***. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." ***United States v. Lemaster***, 403 F.3d 216, 220 (4th Cir. 2005).

In ***United States v. Attar***, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." ***Id***. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. ***Id***. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." ***Id***. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground

5

that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." *Id*.

Subsequently, in **Lemaster**, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. **Lemaster**, 403 F.3d at 220.  Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. *Id*.  And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." *Id*. at n.2.

Here, the waiver petitioner signed effectively waived his right to bring the claims in the instant motion, other than his ineffective assistance claim.  As to the remaining grounds set forth in the motion, the only question is whether the waiver was made knowingly and voluntarily.  In petitioner's plea hearing, the undersigned thoroughly questioned petitioner to ensure petitioner had read and understood the plea agreement.  At that hearing, petitioner indicated he understood that he could face a maximum penalty of twenty years imprisonment, a $1 million fine, and a term of three years of supervised release.  [Doc. 296 at 20].  He indicated that he understood the sentence imposed by the Court may be different from any estimate that his counsel had given him or what he thought it would be.  [Id. at 23].  He indicated that he understood that even if he did not like the sentence imposed, he would be bound by the plea agreement and would have no right to withdraw from it.  [Id. at 24].  He indicated that he understood he was giving up his right to appeal his conviction and sentence.  [Id. at 24–26].  He indicated that he

6

understood that as part of the plea agreement, he was giving up his right to challenge the conviction or sentence in any postconviction proceeding, including under 28 U.S.C. § 2255. [Id. at 26]. Further, he indicated he understood that at the time of that hearing, there was no known evidence of ineffective assistance of counsel. [Id.]. Upon review, this Court finds that petitioner's waiver of the right to collaterally attack his sentence was made knowingly and voluntarily. Therefore, the claims other than ineffective assistance of counsel should be dismissed.

**B. Petitioner cannot show he is entitled to relief on his ineffective assistance claims.**

In petitioner's first ground, he puts forward several alleged errors which he contends amount to ineffective assistance of counsel. Criminal defendants have a Sixth Amendment right to effective legal assistance. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance. ***Strickland***, 466 U.S. at 669.

When considering the reasonableness prong of ***Strickland***, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Id***. at 689; *see also* ***Gray v. Branker***, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" ***Gray***, 529 F.3d at 228 (quoting ***Strickland***, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." ***Strickland***, 466 U.S. at 689.

7

To satisfy the prejudice prong of **Strickland**, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. **Id**. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id**.

The first **Strickland** prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" **Lewis v. Wheeler**, 609 F.3d 291, 301 (4th Cir. 2010) (quoting **Strickland**, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." **Strickland**, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." **Bunch v. Thompson**, 949 F.2d 1354, 1363 (4th Cir.1991).

The second prong of **Strickland** requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. **Strickland**, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id**. at 694. If it is clear the petitioner has failed to satisfy either prong of the **Strickland** standard, a court need not inquire into whether he satisfied the other.

As Judge Hollander stated so well in **Wilson v. United States**, 2016 WL 1366024, at *12–13 (D. Md. April 6, 2016) (Hollander, J.):

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing

8

professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test, which relates to professional competence. In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrison v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'" *Branker*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington* [*v. Richter*], 562 U.S. at 104 [(2011)]; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.

As to performance, the central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court said in *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986): "The reasonableness of counsel's performance is to be evaluated from counsel's

perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." ***Strickland***, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id*.

As the Supreme Court said in ***Padilla*** [***v. Kentucky***], 559 U.S. at 371 [(2010)], "Surmounting ***Strickland's*** high bar is never an easy task." A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." ***Berghuis v. Thompkins***, 560 U.S. 370, 390 (2010).

A court need not address both components if one is dispositive. ***Jones v. Clarke***, 783 F.3d 987, 991 (4th Cir. 2015). This is because the petitioner must prove both prongs in order to prevail; failure to satisfy either prong is fatal to a petitioner's claim. ***Fields v. Attorney Gen. of Maryland***, 956 F.2d 1290, 1297-99 (4th Cir. 1985). As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." ***Strickland***, 466 U.S. at 697. Thus, a court "need not determine whether counsel's performance was deficient before

10

> examining the prejudice suffered by the defendant as a result of the alleged deficiencies." ***Strickland***, 466 U.S. at 697.

***Wilson v. United States***, 2016 WL 1366024, *12–13.

Here, petitioner sets forth twelve reasons he contends his counsel was ineffective. First, the Court notes that several of the listed reasons essentially challenge the Court's findings as to relevant conduct. Petitioner contends that his attorney should have moved to suppress evidence pertaining to a search related to the relevant conduct, should have objected to leading questions during the testimony of Andre Hager, should have objected to using Facebook posts as evidence, should have "state[d] on the record that the government knew that it wasnt (sic) no relevant conduct attributable to me," should have introduced affidavits from other co-defendants, should have had co-defendant Edmonson-Strong testify, and should have moved to "press the issue or object to the actual amount of crack cocaine." [Doc. 437-1 at 1]. As set forth above, petitioner waived his right to challenge the manner in which his sentence was calculated; although framed as ineffective assistance, these challenges are ultimately challenges to the calculation of relevant conduct. Further, analyzing counsel's performance under ***Strickland***, a review of the sentencing transcript shows that petitioner's counsel vigorously challenged the Government's position on relevant conduct. While it is true that trial counsel did not object during Andre Hager's direct examination, he did cross examine Hager, eliciting testimony that much of the time Hager spent as a "door man" took place periods in which petitioner was absent. Upon review of counsel's cross examinations and arguments in the sentencing, this Court finds that counsel's performance in relation to the relevant conduct determinations did not fall below an objective standard of reasonableness.

Next, the Court turns to petitioner's arguments that his trial counsel failed to inform or misinformed him of pertinent sentencing information. He contends that trial counsel failed to inform him of the possibility a two-level enhancement, and that he had been advised his base offense level could not exceed 26. [Doc. 437-1 at 1]. Likewise, he contends that his trial counsel "misinformed that I couldnt (sic) be sentenced on drugs I wasnt (sic) indicted on if there was no conspiracy established." [Id.]. Assuming *arguendo*, that trial counsel misinformed petitioner as to the sentence he might face, the Court finds that petitioner cannot meet the prejudice prong of **Strickland**. When petitioner entered his guilty plea, he indicated that he understood he could face up to 20 years imprisonment. [Doc. 296 at 8—10]. Further, he indicated that he understood that the Court could take *any* conduct into account for purposes of determining relevant conduct:

> THE COURT: And do you understand that under a concept known as relevant conduct the Court may take into account any conduct, circumstances, and injuries relevant to the crime to which you plead guilty?
>
> THE DEFENDANT: Yes, Your Honor.

[Id. at 11]. Petitioner is unable to show that but-for the alleged misinformation, he would not have entered into the plea agreement. Accordingly, this Court finds that petitioner is unable to show that he was prejudiced by his attorney's advice.

Next, petitioner raises two arguments related to trial counsel's trial strategy. First, petitioner contends that his counsel was ineffective because he "failed to investigate the drugs from the labs being inconsistant (sic) from what was on the indictment. He failed to file a suppression hearing on insuffient (sic) evidence. Example is count 3 would say cocaine on the indictment and it would be herion (sic) on the dea-6 or dea-7 form."

[Doc. 437-1 at 1]. Second, petitioner contends his counsel was ineffective for telling petitioner he "didnt (sic) stand a chance with an all white Jury if I went to trial." [Id.].

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." **Strickland**, 466 U.S. at 690–91 (1984) (emphasis added). Petitioner's trial counsel advised petitioner of his belief that petitioner's chances at trial were slim and that petitioner should plead guilty; because petitioner pled guilty, trial counsel did not pursue a challenge to the lab reports. The decision to advise petitioner not to pursue trial was an informed strategic decision. "This Court's review does not include second-guessing the trial strategies of defense counsel unless it is so deficient that it rendered 'the result of the trial unreliable or proceedings fundamentally unfair.'" **Irons v. United States**, No. 2:12-CR-16, 2017 WL 1712523, at *3 (N.D. W.Va. May 2, 2017) (Bailey, J.) (citing **Lockhart v. Fretwell**, 506 U.S. 364, 372 (1993)).

Finally, petitioner contends his appellate counsel failed by not making an argument based on **Alleyne v. United States**, 570 U.S. 99 (2013), and by not filing an **Anders** brief. [Doc. 437-1 at 1]. The Court finds that these arguments are frivolous. First, as to counsel's failure to make arguments based on **Alleyne**, petitioner is unable to show either

prong of *Strickland*. The Fourth Circuit dismissed petitioner's direct appeal, finding that petitioner knowingly and voluntarily waived his right to appeal. *United States of America v. Hansard*, No. 20-41-32 (4th Cir. October 20, 2020). The Court finds that an argument based on *Alleyne* would likewise fall well within the appellate waiver petitioner entered as part of his plea agreement. As to counsel's failure to file an *Anders* brief, an *Anders* brief, if filed, would have informed the court of counsel's belief that an appeal would be frivolous. Far from indicating his client's arguments were frivolous, Hansard's counsel filed a twenty-six-page brief arguing that the base offense level of 30 was not supported by the evidence. The fact that this argument was ultimately unsuccessful does not show that a reasonable attorney would have instead filed an *Anders* brief. Further, petitioner cannot show that he was somehow prejudiced by the lack of such a brief.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [**Civil Action Number 5:21-CV-101 Doc. 1; Criminal Action Number 5:18-CR-50-1 Doc. 437**] be **DENIED** and **DISMISSED with prejudice**.

Within fourteen days after service of this Report and Recommendation, the petitioner may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: February 11, 2022.

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE